IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **LATONYA L. BRYANT,** | ) |
| Plaintiff, | ) ) ) |
| | ) Cause No. |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| **U.S. BANK NATIONAL ASSOCIATION**, | ) ) |
| Defendant. | ) |

## COMPLAINT

**COMES NOW** Plaintiff Latonya Bryant ("**Plaintiff**"), by and through her undersigned counsel, and for her Complaint against the U.S. Bank National Association, ("**U.S. Bank**"), for interference and retaliation under the Family Medical Leave Act ("**FMLA**") states as follows:

## PARTIES

1. Plaintiff Latonya Bryant is an individual citizen and resident of the State of Missouri residing in the Eastern District of Missouri.

2. Defendant is a national banking association which does business on a regular and continuous basis in the Eastern District of Missouri.

## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over the Defendant because the Defendant regularly conducts business in Missouri and otherwise has sufficient minimum contacts with Missouri to confer jurisdiction on this Court. This matter is brought pursuant to federal claims jurisdiction of this Court.

4. Venue is proper in this Court's judicial district pursuant to 28 U.S.C. § 1391 because the defendant regularly conducts business in and has sufficient minimum contacts with this district, and further because a substantial part of the events or omissions giving rise to

1

Plaintiff's claims occurred in this district in that the Plaintiff resided and worked at a U.S. Bank office located in this district when she was unlawfully discriminated and retaliated against resulting in the loss of her job, pursuant to the FMLA.

## BACKGROUND FACTS

5.      Plaintiff began her employment with U.S. Bank in April 2002 and remained continuously employed by U.S. Bank until her discharge on January 3, 2017.  She last held the position of Manager in the Collections Department of U.S. Bank located at 9321 Olive Blvd., Olivette, Missouri.

6.      During her tenure with U.S. Bank, Plaintiff received positive performance evaluations and awards from U.S. Bank.

7.      At all relevant times herein, U.S. Bank was a covered employer under the FMLA, as defined in 29 U.S.C. § 2611(4)(A)(i) in that U.S. Bank is engaged in commerce or an industry affecting commerce and, employs 50 (fifty) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

8.      At all relevant times herein, Plaintiff was an eligible employee, as defined in 29 U.S.C. § 2601 *et seq*. who qualified for FMLA leave because at the time(s) herein alleged when Defendant should have offered Plaintiff FMLA leave, Plaintiff had worked for U.S. Bank for at least twelve (12) months, including at least 1,250 hours during the twelve (12) preceding months, and at a location or worksite where at least 50 employees are employed within 75 miles of that location or worksite.

9.      At all relevant times, Defendant knew or should have known that Plaintiff's mother, Carolyn, suffered from a number of serious health conditions under the FMLA, including chronic lung failure and kidney failure.

10. U.S. Bank employs fifty (50) or more employees within a seventy-five (75) mile radius of Plaintiff's "worksite" with the Defendant in Olivette, Missouri, as defined in 29 C.F.R. § 825.111(a)(2).

11. Plaintiff's mother, Carolyn, suffered from a "serious health condition" as that term is defined in the FMLA in that Plaintiff's mother suffered from a number of aliments, including chronic lung failure and kidney failure, and was medically required to be hospitalized in an emergency situation in January 2017.

12. Plaintiff has a son who has been diagnosed with autism and thus also suffers from a "serious health condition" as that term is defined in the FMLA. When Plaintiff sought to take FMLA leave to care for her autistic son, her supervisor, Michael Prophete, made a derogatory comment that perhaps Plaintiff ought to find a different job with less hours since she had missed some work to care for her son and his serious medical condition.

13. At the same time, Mr. Prophete also said that he would work with Plaintiff because FMLA is different for managers than employees, making a negative inference that a manager should not use FMLA leave.

14. Throughout her employment, Plaintiff had received very strong and positive performance reviews. However, Plaintiff received a performance review in December 2015 which included negative evaluation figures attributed to occurrences when she was out on FMLA leave. However, Plaintiff was out from April to August 2015 on an approved FMLA leave. This demonstrates ongoing animus by the Defendant, its employees and agents, against Plaintiff Bryant for her use of approved FMLA leave.

15. Subsequently after her 2015 FMLA leave, Plaintiff Bryant was placed on her first ever Performance Improvement Plan in January 2016.

3

16.     However, Plaintiff Bryant was removed from the Performance Improvement Plan in February 2016.  From March to May 2016, her team was the number one in office rankings and her team members were awarded a Pinnacle Award.  Further, in her mid-year review in August 2016, Mr. Prophete gave Plaintiff Bryant strong performance evaluations stated that she was doing great at her job.  Plaintiff Bryant had an excellent rating for her mid-year score card at U.S. Bank.  Plaintiff Bryant had nearly 14 years in which she had received the highest performance rating from U.S. Bank.

17.     In December 2016, Plaintiff was out of the office on vacation.  However, Mr. Prophete continued to contact her while she was on vacation and asked her to come into the office to perform work.  In the last week of December 2016, Mr. Prophete requested that Plaintiff Bryant provide various employment documents by January 6, 2017.

18.     On or about January 2, 2017, Plaintiff Bryant's mother was hospitalized on an emergency basis and placed on ventilation with a potential life-threatening illness and condition.

19.     On the morning of January 3, 2017, Plaintiff Bryant contacted U.S. Bank, through its third party FMLA administrator, The Hartford, and requested FMLA intermittent leave to care for her mother who was experiencing the serious health condition of chronic lung failure and kidney failure.

20.     At that time, Plaintiff Bryant had available FMLA leave and records from The Hartford indicated that they had received her FMLA request as of the morning of January 3, 2017.

21.     After contacting The Hartford and requesting FMLA intermittent leave to care for her mother and her mother's serious condition, Plaintiff Bryant then contacted her supervisor, Mr. Prophete, the morning of January 3, 2017 and gave him sufficient notice that her mother was

4

hospitalized on ventilation with life-threatening conditions.  At that time, Plaintiff Bryant told Mr. Prophete that she had requested FMLA intermittent leave to care for her mother's serious health condition.

22. During the mid-afternoon on January 3, 2017, Plaintiff Bryant continued her conversations with The Hartford and completing FMLA forms.  At that time, The Hartford gave Plaintiff Bryant a claim number for her FMLA intermittent leave to care for her mother.

23. Plaintiff Bryant went to the office at or approximately noon on January 3, 2017 to finish time sheets by 4:45 P.M.  On that same day in the afternoon, having been given sufficient notice that the Plaintiff was exercising her rights under the FMLA, Mr. Prophete called her in the office and suddenly terminated her without advance warning and for pretextual reasons that had not previously been raised with her prior to her termination.

24. During the termination meeting, Mr. Prophete stated that with Plaintiff Bryant's mother and son's medical conditions, Plaintiff Bryant needed a position that was less stressful.

25. The Plaintiff's FMLA leave to care for her mother constitutes qualified FMLA leave pursuant 29 U.S.C. § 2601 et seq.

## COUNT I – RETALIATION

26. Plaintiff restates and re-alleges each and every allegation set forth in paragraphs 1 through 25 as paragraph 26 of Count I of her Complaint.

27. By requesting FMLA leave to care for her mother and her mother's serious health condition on January 3, 2017, the Plaintiff herein engaged in statutorily protected conduct by exercising rights to which she was entitled under the FMLA leave.

28. Without legitimate reason, Defendant U.S. Bank terminated Plaintiff and retaliated against her by terminating her employment, by which plaintiff suffered a materially

adverse employment action, <u>on the same exact day in which she had requested FMLA intermittent leave;</u> the same day she had been granted a claim number for her FMLA intermittent leave, and had informed her supervisor, Mr. Prophete, of her need to take FMLA leave to care for her mother, all in violation of the Family Medical Leave Act.

29. The Defendant was motivated to terminate the Plaintiff because of her exercise of rights under the FMLA in that U.S. Bank had not previously given Plaintiff any warnings or discipline about her performance, after February 2016, and now claimed on January 3, 2017 that there were performance deficiencies, all of which were pretextual reasons for her discharge.

30. There is a causal link between Plaintiff's FMLA request on the morning of January 3, 2017 and the materially adverse employment action of being terminated by U.S. Bank later <u>on that same day</u>, as evidenced by the close temporal proximity between her FMLA leave request and discharge, and because Plaintiff had always received favorable performance ratings and was a valued employee of the Defendant, until she made her FMLA request for leave the morning of January 3, 2017, all in violation of the Family Medical Leave Act.

31. There is a causal link between Plaintiff's FMLA request on January 3, 2017 and the adverse action of her being terminated that same day, as evidenced by Mr. Prophete's comments during her termination that Plaintiff Bryant needed a job that was less stressful because of her mother and son's medical conditions.  This represents multiple occasions on which Mr. Prophete made derogatory comments about Plaintiff's exercise of FMLA leave and his negative reference in her performance review in which he singled out as an alleged performance deficiency the fact that she was out on leave, all in violation of the Family Medical Leave Act.

32. As a direct and proximate result of its retaliatory and discriminatory acts and

6

omissions as described hereinabove, Plaintiff has been damaged and is entitled to recover her lost wages, salary, employment benefits, seniority and other compensation denied or lost by reason of Defendant's FMLA violations, together with interest on the amounts lost at a rate 9% per annum.

33. Plaintiff is entitled to recover liquidated damages equal to the sums lost in wages and benefits and interest due thereon, as alleged in Paragraphs 28 to 31, because Defendant engaged in a reckless disregard of her legal rights under the FMLA.

34. Plaintiff is entitled to recover her attorneys' fees and costs herein incurred, including expert witness fees, if any.

35. Plaintiff is entitled to recover equitable relief as may be appropriate, including reinstatement, setting aside her resulting termination, and expunging from her personnel record said adverse employment actions.

**WHEREFORE**, Plaintiff prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant as to her claim in Count I, award Plaintiff her back wages and benefits lost as a result of Defendant's unlawful conduct, together with pre-judgment and post-judgment interest at the rate of 9% per annum; award Plaintiff, as and for her liquidated damages, a sum equal to her lost wages, benefits and interest; award to Plaintiff her attorney's fees, expenses and expert witness costs, if any; award to Plaintiff her costs; and award to Plaintiff such other and further relief this Court deems just and proper.

### COUNT II- INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

36. This court has supplemental jurisdiction over Count II, pursuant to 28 U.S.C. § 1367 in that the claim in Count II involves the same parties and workplace involving the Plaintiff and Defendant and thus forms part of the same case or controversy as Count I.

7

37. Defendant U.S. Bank, its employees and agents, had knowledge that Plaintiff's mother had been hospitalized as of January 2, 2017 on an emergency basis and was placed on a ventilator because she suffered from life-threatening health conditions.

38. Specifically, Mr. Prophete had knowledge of the long history of Plaintiff's mother with stroke and her most recent emergency hospitalization on January 3, 2017, which placed her in a dire medical situation.  At all relevant times herein, Mr. Prophete was acting within the course and scope of his employment as an employee of Defendant engaged in an employee termination to further the interests of the Defendant.  He acted as a supervisor under the Defendant's general authority and direction since an employee termination naturally arose from the performance of the Defendant's work.

39. Mr. Prophete knew that Plaintiff Bryant was an important caretaker for her mother and that Plaintiff Bryant previously suffered conditions of stress and anxiety due to caring for her elderly and extremely ill mother.

40. On January 3, 2017, Mr. Prophete knew that Plaintiff's mother was suffering from a potential life-threatening injury, was on ventilation at a hospital, and that Plaintiff was a major caretaker for her mother.  In spite of this knowledge, and just when Plaintiff had place on her coat to leave for the hospital, Mr. Prophete called Ms. Bryant into his office and terminated her at the very moment in which she was leaving to care for her mother due to life-threatening conditions and the fact of her mother being on a ventilator.

41. The Defendant acted intentionally and recklessly in terminating Plaintiff Bryant's employment <u>the same afternoon</u> in which her supervisor knew that she was a required caretaker for her mother who was suffering from life-threatening medical conditions and was placed on a ventilator in an area hospital.

42. The Defendant's conduct in taking away Plaintiff Bryant's ability to be employed all on the same afternoon while she was leaving to care for her mother as outlined above, was so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

43. As a direct and proximate result of Defendant's acts and omissions as described herein, Plaintiff Bryant suffered damages including severe emotional distress that resulted in bodily harm.

**WHEREFORE**, Plaintiff prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendant as to her claim in Count II, award Plaintiff actual and compensatory damages, award to Plaintiff her attorney's fees, award to Plaintiff her costs; and award to Plaintiff such other and further relief this Court deems just and proper.

Respectfully submitted,

**WEISS ATTORNEYS AT LAW, P.C.**

   /s/ James G. Nowogrocki
James G. Nowogrocki, #38559
Morgan L. Taylor, #67750
1015 Locust Street, Suite 400
St. Louis, Missouri 63101
Telephone: (314) 588-9500
Facsimile: (314) 588-9595
jnowogrocki@weisslawstl.com
mtaylor@weisslawstl.com

*Attorneys for Plaintiff*

E:\CLIENTS\BryantL.9-3047.01\Complaint Bryant.DOC